IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LARRY L. SEARS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ZIONS BANCORPORATION, N.A. | ) |
| f/k/a ZB, N.A. d/b/a Amegy Bank of Texas, | ) |
| | ) |
| Defendant. | ) Civil Action No. 3:19-CV-2810-C |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. Having considered the Motion, the Parties' briefing, and all applicable law, the Court is of the opinion that Defendant's Motion for Summary Judgment should be **GRANTED**.

## I.
## BACKGROUND

On October 1, 2012, Zions Bancorporation N.A. d/b/a Amegy Bank of Texas ("Amegy")[1] hired Larry Sears as a senior vice president relationship manager in its Dallas based energy lending department. Specifically, Terry McCarter, former manager of Amegy's Dallas energy lending department, approached Steve Kennedy, an executive vice president, about the possibility of hiring Sears. After conducting an interview, McCarter and Kennedy elected to hire Sears as a senior vice president, with the more formalized role of energy lending relationship

---

[1] Amegy Bank of Texas, as it is now known as, began in 1990 as Southwest Bank of Texas in Houston, Texas. Southwest Bank of Texas thereafter acquired Dallas based Lone Star Bank. Southwest Bank eventually changed its name to Amegy Bank of Texas before being acquired by Zions Bancorporation, N.A.

manager, level 5. Sears understood his primary responsibility as a senior vice president to be business development, with a secondary focus on portfolio management. At the time of Sears' hiring, John Murray and Jill McSorely also served as senior vice presidents in the Dallas energy lending department. J.B. Askew was also a part of the Dallas energy lending department and initially served as an assistant vice president. All four individuals reported directly to McCarter, who in turn reported to Kennedy.

Several years later, in December of 2015, McCarter retired. As Sears recalls, Kennedy informed the Dallas energy lending department that "it was a position elimination"—simply meaning that McCarter would not be replaced post-retirement. Sears and other employees were thereafter instructed to report directly to Kennedy. McCarter's managerial position remained vacant. Sears believes that he should have been promoted to replace McCarter, but admits that he never expressed that desire to Kennedy, never applied for the position (which was never posted), and never lodged a formal complaint to anyone about the fact that he was not promoted.

Almost two years later, to make room on the payroll for a full-time equivalent position to be filled by an eventual external hire, Amegy determined that it needed to eliminate one of the senior vice president positions in the Dallas energy lending department—a discussion and process that began as early as November of 2017. In the spring of 2018, when deciding which of the four senior vice president positions to eliminate, Kennedy prepared an "informal ranking of the four." The reasoning behind the ranking and eventual elimination of one of the four positions—as opposed to demoting one of the senior vice presidents—was because there was considerable compensation at issue. By eliminating one of the senior vice president positions,

2

Amegy would then have enough available compensation to be able to hire an official manager to head the Dallas energy lending department.

Out of the four senior vice presidents, Sears ranked fourth and last. In ranking the positions, Kennedy testified that he considered Sears' past performance, including Sears' failure to integrate with other departments within Amegy. Specifically, Kennedy considered Sears' past performance reviews—which included an overall assessment of 7 out of 10 in 2013; 4.8 out of 5 in 2016; and 3.8 out of 5 in 2018. Overall, Kennedy found Sears' performance broadly acceptable. However, Kennedy had concerns with at least two out-of-town trips Sears took to attend social events put on by other banks. Kennedy also had concerns with Sears' ability to timely communicate, including failing to communicate internally for a year and a half about significant events involving oil spills and clientele.

In formulating the rankings, Kennedy considered a March 20, 2018 email from Kirk Wiginton—CEO of the Dallas/Fort Worth Region—to Sears and Sears' subsequent response. In that particular email, Wiginton expressed to Sears that Amegy's "President's Council" meeting was very important in allowing others to understand the overall gameplan in Dallas and offered an opportunity to discuss information loaded by various departments into Amegy's "Salesforce" lead-tracking tool.[2] Sears ignored Wiginton's email for two days, and when he finally responded, took the "opportunity to share some observations of importance relative to the Dallas Energy Group." The observations included a lengthy explanation of why the energy banking group should be allowed to focus on its own outcomes without being forced to fully utilize the Salesforce tool. Sears expressed frustration about "changing requirements and lending

---

[2] Salesforce is Amegy's method of collecting internal data.

3

parameters" being implemented at a bank wide level which, in Sears' estimation, were not supportive of growth in the energy portfolio. When Kennedy reached out to Sears to discuss Wiginton's email, Sears ignored Kennedy's email for three days prior to responding.

Amegy eventually made the decision to eliminate Sears' position in early April of 2018. On April 2, 2018, Deanna Rippey, a human resources executive, memorialized the decision to eliminate Sears' position and to "repurpose the position to recruit for an Energy Lending Manager who will manage the Energy Lending Team in Dallas and will report to Steve Kennedy." Rippey noted that this was the product of the discussions that began in 2017 "regarding the effectiveness and structure of Amegy's Energy Lending group in Dallas."

Kennedy, who resides in Houston, traveled to Dallas on April 30, 2018, to deliver the news to Sears. Kennedy informed Sears that eliminating his position was necessary for budgetary reasons if Amegy was going to bring in another full time equivalent because Amegy needed to keep "the FTE count and generally the overhead cost in the group generally flat." Sears recalls being flabbergasted that he was not considered for the managerial role, but admits that he never expressed an interest in it. Sears further recalls that the human resources officer told him "very clearly that this was not a matter of performance." In August of 2018, Amegy suspended its search for an external hire and instead assigned Scott Collins—manger of the Houston energy banking group—the additional responsibility of managing the Dallas energy group.

As a direct result of his termination, Sears alleges to have been the subject of age discrimination in violation of the Texas Labor Code. Namely, Sears advances three arguments for age discrimination: disparate pay, failure to promote, and wrongful termination.

4

*Sears' Workplace Injury*

Prior to Sears' termination, on March 28, 2018, Sears tripped and fell when his pant leg became caught on the edge of a file drawer. Sears did not report his injury to Amegy until April 11, 2018. Sears filed a workers' compensation claim, which was approved, and attended physical therapy at least once weekly for a six week period. As a result of filing the claim and eventual termination, Sears has asserted a claim for workers' compensation retaliation under Texas law.³

## II.
## STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013). A material fact is one that might affect the outcome of the case under the governing law; a dispute concerning a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Tagore*, 735 F.3d at 328 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (quotations omitted). To determine whether a genuine dispute exists such that the case must be submitted to a jury, courts must consider all of the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving

---

³ *See* 28 U.S.C. § 1445(c) ("A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."). However, Sears failed to move for remand within 30 days from the date this civil action was removed. Accordingly, Sears has waived his right to do so and the Court continues to have jurisdiction over Sears' claims. *See Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783 (5th Cir. 1993); *see also Worldwide Detective Agency, Inc. v. Cannon Cochran Mgmt. Servs., Inc.*, 622 F. App'x 383, 386 (5th Cir. 2015) ("Section 1445(c) is a procedural bar against removal that a party waives when, as here, it fails to raise the issue within 30 days of removal.").

party, refuse to make credibility determinations or weigh the relative strength of the evidence, and disregard all evidence favorable to the movant that the jury would not be required to believe. *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013).

If the burden at trial would be on the non-moving party, the movant must merely demonstrate "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). The burden then shifts to the non-moving party to produce evidence showing the existence of a genuine issue of material fact for trial. *Bayle*, 615 F.3d at 355; Fed. R. Civ. P. 56(e). To meet this burden, the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial. *Bayle*, 615 F.3d at 355. "[C]onclusory statements, speculation, and unsubstantiated assertions" are not specific facts and are not sufficient to defeat a motion for summary judgment. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## III.
## DISCUSSION

### *Age Discrimination*

Sears' first asserts a cause of action for age discrimination under the Texas Labor Code. Specifically, Sears alleges that Amegy engaged in a continuing course of discriminatory conduct by subjecting him to less favorable working conditions than younger employees and by failing to apply employee performance review and compensation standards equally. Sears further avers that Amegy terminated his employment and that he was replaced by a substantially younger individual.[4]

---

[4] Within Sears' Amended Response to Amegy's Motion for Summary Judgment, Sears arguably fails to address and therefore concedes the disparate pay and failure to promote theories of liability. To

6

To establish a prima facie case of age discrimination, an employee must demonstrate that he: "1) suffered an adverse employment action; 2) was qualified for the position; 3) was within the protected class when the adverse action occurred; and, 4) was replaced by someone younger or outside the protected class, treated less favorably than a similarly situated younger employee, or otherwise discharged because of his age." *Maestas v. Apple, Inc.*, 546 F. App'x 422, 425-26 (5th Cir. 2013). A "plaintiff may make out a prima facie case of discrimination using either direct or circumstantial evidence." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015).

"[D]irect evidence is evidence which, if believed, proves the fact without inference or presumption." *Id.* at 488. "If an inference is required for the evidence to be probative as to [defendant's] discriminatory [motive] . . . the evidence is circumstantial, not direct." *Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 776 (N.D. Tex. 2013) (Fitzwater, J.) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897-98 (5th Cir. 2002)). In the event a "plaintiff presents direct evidence of discrimination, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Etienne,* 778 F.3d at 475. "If the plaintiff presents only circumstantial evidence, then she must prove discrimination inferentially using '[t]he three-step *McDonnell Douglas-Burdine* 'minuet.'" *Id.* (quoting *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994)).

---

the extent Sears plausibly contends that he should have been promoted immediately to replace McCarter, and that Amegy's failure to do so was motivated by Sears' age, Sears was required to file a charge of discrimination as to that specific claim by no later than May of 2017. Sears did not file the charge until August 15, 2018, and any alleged failure to promote claim fails for that very reason.

7

Under the *McDonnell Douglass* framework, "a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). If a plaintiff is successful, "[t]he burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* "The burden on the employer at this stage 'is one of production, not persuasion; it can involve no credibility assessment.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Last, "[i]f the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.*

### i. Direct Evidence

Having reviewed the evidence proffered, the Court finds that the record does not support a finding that Sears can establish a claim for age discrimination utilizing direct evidence. Accordingly, Sears must show a violation "using circumstantial evidence [and] must satisfy the *McDonnell Douglas* burden-shifting framework." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).

### ii. McDonnell Douglass Framework

Having considered the Parties' briefing and the evidence adduced, the Court finds that Sears has failed to establish a prima facie claim of age discrimination. Specifically, as to Sears' unfair compensation claim, the Court finds that Sears cannot establish that he was treated less

8

favorably than other similarly situated employees outside the protected group.[5] As to Sears' wrongful termination claim, the Court finds that Sears cannot establish that he was "replaced." The evidence provided demonstrates that Sears' job duties were redistributed to other employees upon Sears' termination.[6] *See Kean v. Jack Henry & Assocs., Inc.*, 2013 WL 2983504, at *5 (N.D. Tex. June 17, 2013) ("The Fifth Circuit has explained that applicable case law holds that when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced.").

Sears argues in the alternative that the Court need not decide whether he was "replaced" because he can establish the fourth element of his prima facie case by showing that, even if he was not replaced, he was treated less favorably than other similarly situated employees outside the protected group. Specifically, Sears argues that he has presented evidence of disparate treatment by virtue of the fact Amegy terminated his employment, while retaining younger employees (Askew, Lang, and Bush). Sears further argues that the evidence demonstrates that internal plan was to establish a younger workforce.

Here, the evidence establishes that Amegy's plan was to eliminate one of the senior vice president positions in the Dallas energy lending department—meaning Sears, Murray, McSorley, or Askew. Lang and Bush were not vice presidents, and as such, their positions were not

---

[5] While the evidence establishes that John Murray—who was also an Energy Lending Relationship Manager, level 5, and is the same age as Sears—earned more per year than Sears, Murray had been in the position for four more years than Sears.

[6] Kennedy informed the banking group a few days after Sears' departure that Sears had eight major "relationships" that needed to be redistributed. McSorely (age protected) and Murray (age protected) would each receive 2—Matt Lang would receive the remaining four with assistance from Murray. To the extent Sears argues that he was replaced by Askew, the only evidence produced purports to be a copy of Askew's LinkedIn profile and résumé from February of 2021. However, Askew's job duties, more than two years after Sears' termination, have no bearing on the disposition of this case.

9

considered for elimination. Thus, the fact that those two individuals were retained makes no difference. Moreover, Sears cannot simply point to Askew's age and claim that it alone establishes a prima facie case. The Fifth Circuit has made clear that when an indirect-evidence Plaintiff cannot establish that he was replaced, he must come forward with evidence that he was "otherwise discharged because of his age." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353 (5th Cir. 2005). Sears has failed to direct the Court to any evidence to support his argument that he was otherwise discharged because of his age other than three pages of his own deposition testimony. Within said testimony, Sears testified about his own belief that Kennedy favored younger bankers and about his observation that it was very clear that Amegy was trying to push as much money at the younger bankers as possible. However, the evidence demonstrates that Sears was paid far more generously than the three younger employees about whom he complains. Sears also claims that "McCarter had indicated . . . [in late 2016], that there were efforts to try to push these kids up as quickly as they could, and increase their compensation as quickly as they could." When asked if Sears was familiar with the details of any such discussions, Sears admitted that he was not. Based on the foregoing, the Court is of the opinion that Sears has failed to establish a prima facie case of age discrimination.

In the alternative, the Court will assume, *arguendo*, that Sears has satisfied his burden of establishing a prima facie claim. Thus, the Court will move to analyze the remaining prongs of the *McDonnell Douglas* burden-shifting framework and will determine if Amegy has met its burden of articulating a non-discriminatory reason for the adverse employment actions complained of and whether Sears has created a genuine issue of material fact as to the existence of pretext.

10

Having considered the Parties' briefing and the evidence proffered, the Court finds Amegy has stated a legitimate and non-discriminatory reason for terminating Sears' employment. Specifically, Amegy has provided evidence that Sears' termination was simply a reduction in force.[7] To the extent Sears' real contention is that Amegy should have selected someone else's position for elimination, and that Amegy's decision to eliminate his position was motivated by his age, the undisputed evidence belies his speculative argument. As set forth in detail in Amegy's briefing, Amegy's decision to eliminate one of the senior vice president positions was the product of a months-long collaborative process. Amegy's reasons for wanting to eliminate a senior vice president position are undisputed.[8]

Sears has advanced several arguments that Amegy's stated reasons for its employment decision are mere pretext, including: (1) Sears' good job performance; (2) Amegy failed to follow an alleged policy providing for one on ones and reviews; (3) Amegy's decision makers lack credibility in their testimony; and (4) other similarly situated individuals were treated differently. Sears' good job performance is not relevant in terms of pretext. Specifically, Amegy has not claimed that it terminated Sears for cause or that Sears' performance was sub-standard. Rather, the evidence demonstrates that Sears' position was eliminated due to budgetary restrictions. Sears next argues that the evidence establishes that there was a policy providing for one on ones and reviews to give the employees notice of performance issues and that none were

---

[7] *See Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 438 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("[a] reduction in force is a legitimate, nondiscriminatory reason for an employee's termination.").

[8] To the extent Sears believes that Amegy should not have eliminated a senior vice president position at all, he impermissibly asks the Court to second guess Amegy's business judgment.

11

held. Once again, however, Sears was not terminated for cause and there is no evidence to suggest that Sears engaged in conduct that would have necessitated the need for any corrective action plan. Additionally, Sears has not produced evidence to establish that supervisors were required to provide performance evaluations, or that Kennedy's evaluations fell short of being complete.

Sears' third argument in favor of finding pretext is the lack of credibility of Amegy's decision makers' testimony. Specifically, Sears contends that Kennedy gave him a verbal review asking for improvement the day after Amegy alleges that it decided to terminate Sears—although Sears does not explain the significance of these alleged events. Sears further argues that "the exaggerated complaints about Plaintiff when there are absolutely no contemporaneous documents to back up those complaints, is suspect." Here, however, Sears has not directed the Court's attention to any alleged inconsistencies between the testimony of Wiginton and Kennedy, nor any internal inconsistencies in either of their answers. Thus, Sears has not come forward with sufficient (or any) evidence to set the stage for a credibility assessment.

Last, Sears' final argument in favor of finding pretext is that Amegy treated other similarly situated individuals differently. Specifically, Sears contends that Kennedy was more communicative with younger bankers, including Askew, and that Kennedy did not discipline Askew for the same conduct Sears engaged in with respect to attending a conference in Houston. As to Kennedy's relative ability to communicate, Sears fails to offer any evidence for why Kennedy's alleged additional interfacing with younger employees is evidence of discrimination, as opposed to, for example, mentoring. As to the allegation that Kennedy disciplined Sears, but did not discipline Askew, when the two attended an out-of-town conference without providing

advance notice to Kennedy, the evidence simply is not there. Specifically, there is no evidence that Sears was disciplined for attending the conference and that Askew was not.[9] Finally, in further support of his claim that Amegy treated other similarly situated employees differently, Sears argues that Murray and Sears, the two oldest senior vice presidents, began being denied restricted stock units and were both eventually terminated. Sears argues that the younger employee officers received restricted stock units. Sears testified that he had always received restricted stock units based on the performance of the bank and that he received units in 2016, but did not receive any units in 2017 or 2018. However, there is simply no reference or evidence as to whether Murray, Askew, Lang, or anyone else received restricted stock units in those particular years and no evidence regarding why certain employees did or did not receive stock grants in any given year.

Based on the foregoing, the Court finds that Sears has failed to satisfy his summary judgment burden in showing that Amegy's proffered reason for its employment decisions are mere pretext. Accordingly, Amegy's Motion for Summary Judgment is **GRANTED** as to Sears' age discrimination claim.

### *Workers' Compensation Retaliation*

Sears' second cause of action is for workers' compensation retaliation in violation of Section 451 of the Texas Labor Code. To prevail on this claim, Sears must establish that he was

---

[9] Sears' Declaration, offered in support of Sears' Response to Amegy's Motion for Summary Judgment, provides: "[a]fter Steve Kennedy expressed his unhappiness to me regarding the attendance of Askew and myself at a function in Houston, I asked J.B. whether Kennedy had mentioned this as a concern to him and he said no. I felt I was being treated differentially (sic) since we both went to the function."

discharged or otherwise discriminated against because he filed a workers' compensation claim, and that the discrimination or discharge would not have occurred but for the filing of the claim. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). To establish this causal connection, Sears must demonstrate the following: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Cont'l Coffee Prod. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996). If Sears establishes a causal link, the burden shifts to Amegy to articulate a legitimate, non-discriminatory reason for its actions. *Id.* at 450-51 and n. 3.[10] Once it does so, the burden shifts back to Sears, this time to "produce controverting evidence raising a fact issue as to a retaliatory motive." *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, pet denied).

Here, the evidence establishes that Kennedy did not become aware of Sears' workers' compensation claim until well after the decision to eliminate Sears' position had been made.[11] The fact that Kennedy did not reconsider the decision to eliminate Sears' position after learning of Sears' workers' compensation claim does not give rise to an inference of discrimination. Sears further admits that nobody at Amegy expressed a negative attitude towards him after the

---

[10] Sears admitted that "at this moment, I don't" have any evidence that Amegy retaliated against him for filing his workers' compensation claim. Thus, in order to make out a prima facie claim for retaliation, Sears must rely upon circumstantial evidence to prove the causal connection.

[11] As previously noted, Deanna Rippey memorialized the decision to eliminate Sears' position on April 2, 2018. Sears did not disclose his workplace injury until April 11, 2018, and Kennedy did not learn of Sears' injury until the following day.

filing of his workers' compensation claim. Moreover, Sears has no evidence to establish that Amegy failed to adhere to any company policy in eliminating his position or that it deviated from any of its standard policies regarding workers' compensation claims. Likewise, Sears has no evidence that employees who had not filed workers' compensation claims were treated differently. Finally, Sears has no evidence to demonstrate that Amegy's stated reasons for his discharge are false.

The Court will assume, *arguendo*, that Sears has satisfied his initial burden of establishing a causal connection. The burden shifts to Amegy to articulate a legitimate, non-discriminatory reason for its actions. It has done so. Specifically, Amegy had introduced evidence that its decision to terminate Sears' employment was based upon the "neutral application of a non-discriminatory legitimate business policy." *Armendariz v. Redcats USA, L.P.*, 390 S.W.3d 463, 468 (Tex. App.—El Paso 2012, no pet.). Thus, the burden shifts back to Sears to produce controverting evidence raising a fact issue as to a retaliatory motive. To sustain his burden, Sears relies upon the falsity of the reasons for his discharge, evidence of good performance, as well as lack of credibility of the witnesses. However, and for the reasons argued in Amegy's briefing, the Court finds that Sears has failed to adduce evidence sufficient to raise a fact question regarding whether Amegy's articulated reasons for its decision to eliminate Sears' position was mere pretext for a retaliatory motive. Accordingly, Amegy's Motion for Summary Judgment is **GRANTED** as to Sears' workers' compensation retaliation claim.

## IV.
## CONCLUSION

For the reasons stated herein, as well as for the reasons argued in Amegy's briefing, the Court **ORDERS** that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's claims be **DISMISSED**. Judgment shall be entered accordingly.

SO ORDERED this 31st day of March, 2021.

*[signature]*

SAM R. CUMMINGS
SENIOR UNITED STATES DISTRICT JUDGE